IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**TAMMIE COLEEN WILSON**                                                         **PLAINTIFF**

**V.**                               **NO. 4:18-CV-757-JM-BD**

**ANDREW SAUL, Commissioner of**
**Social Security Administration**[1]                                         **DEFENDANT**

### RECOMMENDED DECISION

This Recommendation has been sent to Judge James M. Moody, Jr. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. And, if they do not file objections, parties may waive the right to appeal questions of fact.

**I. Introduction:**

On January 25, 2016, Tammie Coleen Wilson applied for disability benefits, alleging disability beginning April 15, 2012.[2] (Tr. at 12, 101) Her claims were denied both initially and upon reconsideration. *Id.* After conducting a hearing, the Administrative Law Judge (ALJ) denied Ms. Wilson's application. (Tr. at 26) She

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] At the hearing, Wilson amended her alleged onset date to August 1, 2014. (Tr. at 47)

requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1) Therefore, the ALJ's decision now stands as the final decision of the Commissioner. Ms. Wilson filed this case seeking judicial review of the decision denying her benefits.

## II.  The Commissioner's Decision:

The ALJ found that Ms. Wilson had not engaged in substantial gainful activity since the amended alleged onset date of August 1, 2014. (Tr. at 14) At step two of the five-step analysis, the ALJ found that Ms. Wilson had the following severe impairments: osteoarthritis/degenerative disc disease and scoliosis of the lumbar spine, obesity, hypothyroidism, hypertension, and a history of multiple bilateral knee surgeries, including bilateral total knee arthroplasty. (Tr. at 15)

After finding that Ms. Wilson's impairments did not meet or equal a listed impairment (Tr. at 17), the ALJ determined that Ms. Wilson had the residual functional capacity (RFC) to perform the full range of work at the sedentary level, with some additional limitations. *Id.* She could not climb, kneel, crouch, or crawl. *Id*. She could only occasionally balance and stoop. *Id*. She must avoid concentrated exposure to hazards. *Id.*

The ALJ found that, based on the assigned RFC and testimony from the Vocational Expert (VE), Ms. Wilson could perform her past relevant work as a transcriber and an accounting clerk. (Tr. at 25). Based on that step-four determination, the ALJ held that Ms. Wilson was not disabled. *Id.*

**III. <u>Discussion:</u>**

    A.   Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and assure that the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (*citing Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). Stated another way, the decision must rest on enough evidence that "a reasonable mind would find it adequate to support [the] conclusion." *Halverson*, 600 F.3d at 929. The Court will not reverse the decision, however, solely because there is evidence to support a conclusion different from that reached by the Commissioner. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

    B.   Ms. Wilson's Arguments on Appeal

Ms. Wilson maintains that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues four points in this appeal: (1) the ALJ failed to fully develop the record; (2) the ALJ did not give proper weight to the opinion of Dr. Roxanne Marshall, M.D.; (3) the credibility analysis was flawed; and (4) the ALJ erred at step four in his determination that Ms. Wilson could return to her past relevant work. After reviewing the whole record, however, the Court concludes that the ALJ did not err in denying benefits.

Much of the evidence in the record pertains to hospital visits prior to the relevant time period, which began August 1, 2014. Generally, that evidence showed mild

objective findings, conservative treatment, and positive response to medication. (Tr. at 464, 469, 501, 524, 525, 530, 533, 650-658, 801-844, 909, 910, 1074, 1081, 1153) Also, throughout the record, Ms. Wilson (who was 5'5" and weighed over 200 pounds) was counseled to lose weight, improve her diet, and exercise. (Tr. at 524-525, 533-534, 1187) She did not follow these suggestions. A failure to follow a recommended course of treatment weighs against a claimant. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).

Dr. Marshall, Ms. Wilson's treating physician, told her that her morbid obesity was putting her at high risk for stroke and heart problems. (Tr. at 524) Indeed, medical experts concur that problems such as chest pain, hypertension, low back pain, and osteoarthritis of the knees are complicated by obesity, and that was the case here. The ALJ discussed the effect Ms. Wilson's obesity had on her health, as required by the regulations; he properly found that obesity did not render her unable to work when considered in combination with her other impairments. (Tr. at 15) Notably, Ms. Wilson admitted to smoking a pack of cigarettes a day, even after her doctors told her to stop. (Tr. at 492, 517, 540, 784)

Ms. Wilson generally demonstrated good range of motion, good reflexes, normal gait, and good coordination upon musculoskeletal examination. (Tr. at 909, 1081, 1190, 1200, 1203, 1246) Normal examination findings are not indicative of disabling pain. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). A lumbar MRI showed scoliosis and

facet arthrosis, with no disc herniation or nerve root compression. (Tr. at 1566-1580) Ms. Wilson did develop degenerative joint disease in her knees, which caused swelling in her legs. (Tr. at 66-67, 1494, 1533-1536) She said that this prevented her from sitting, walking, or standing for any great length of time. (Tr. at 66-67, 1494, 1533-1536) However, Ms. Wilson had bilateral total knee replacement surgeries to repair the damage, and she recovered well from those surgeries (mild post-op pain, made good progress, surgery helped, symptoms improved with treatment). (Tr. at 1341-1542) She also testified that she did not take any medications for the swelling in her legs. (Tr. at 66)

Her right knee became infected after surgery but improved upon treatment with antibiotics. (Tr. at 1315-1322) Ms. Wilson reported that rest, warm baths, hydrocodone, and Voltaren gel helped with joint pain. (Tr. at 1301, 1572-1578, 1670) Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

Ms. Wilson also suffered a right rotator cuff tear, which required surgery on June 30, 2017 (Tr. at 1650-1653) At the hearing, however, she testified that her shoulder was doing well. (Tr. at 70) She went to physical therapy and tolerated the exercises well and experience increased range of motion. (Tr. at 1657-1670) She admitted that she did not follow up with her surgeon after physical therapy. (Tr. at 75)

Ms. Wilson also claims that stress, depression, and anxiety contributed to her problems. She specifically argues that the RFC did not account for the stress she

5

experienced in work situations. Notably, Ms. Wilson did not receive any formal psychiatric treatment, and clinic notes reflect that her occasional stress was situational and had resolved (Tr. at 1189) Her primary care physician treated any mental health symptoms conservatively. (Tr. at 68, 530, 754, 784) The record contains few references to mental health problems; in fact, when Ms. Wilson presented to her doctors for physical problems, invariably, psychiatric clinical exams were normal. (Tr. at 801, 844, 1083, 1195, 1442)

Ms. Wilson claims that the ALJ should have ordered a consultative examination or re-contacted her treating physicians. She states that the ALJ gave too much weight to the reviewing state-agency physicians, who found that she was capable of sedentary work. (Tr. a 139, 162) She takes particular issue with the little weight the ALJ gave to the medical source statement from Dr. Marshall. (Tr. at 25) That opinion, dated January 31, 2013, suggested that Ms. Wilson was quite limited in her ability to perform physical work functions such as sitting, walking, standing, and reaching. (Tr. at 508-509) Dr. Marshall opined Ms. Wilson would miss one day of work per month because of her impairments. *Id*.

Dr. Marshall's opinion predates the relevant time-period; it was written on a two-page check-the-box form; and it did not cite to any objective evidence for support. *Id*. A conclusory form with only checked boxes has little evidentiary value when it cites to no medical evidence and provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790,

794 (8th Cir. 2012). Moreover, mild objective findings, conservative care, and infrequent treatment contradict Dr. Marshall's findings. And, Dr. Marshall did not reference Ms. Wilson's noncompliance with the recommendations to quit smoking, lose weight, and exercise. The ALJ properly discounted this cursory medical opinion.

As for development of the record. An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a claimant has the burden of proving her disability; the ALJ does not have to act as counsel for the Plaintiff. *Id*. The ALJ is obligated to re-contact a treating or consulting physician or to order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011) Absent unfairness or prejudice, reversal for failure to develop the record is not warranted. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

When asked at the hearing whether the record was complete, Ms. Wilson's counsel stated that the ALJ did not need to leave the record open for further evidence. (Tr. at 46-47) This indicates that Ms. Wilson and her attorney were satisfied that the record was fully developed. Moreover, the ALJ properly evaluated the evidence in the record in conjunction with the reviewing physician opinions and found no inconsistencies. There was no need for the ALJ to obtain further evidence.

Ms. Wilson also argues that the ALJ erred in his credibility findings. Social Security Ruling 16-3p, 2016 SSR LEXIS 4 (SSR 16-3p) no longer includes the word "credibility"; instead, the ALJ is required to evaluate the consistency of a claimant's allegations with other evidence in the record. SSR 16-3p became effective on March 28, 2016, and the underlying analysis incorporates the familiar factors that were in place prior to the new ruling. *Martsolf v. Colvin*, No. 6: 16-cv-00348-NKL, 2017 U.S. Dist. LEXIS 2748 (W.D. Mo. Jan. 9, 2017). Thus, the ALJ must still give consideration to all of the evidence presented relating to subjective complaints, including but not limited to: 1) prior work record; 2) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984).

Ms. Wilson complained of soreness in her shoulder, tenderness in her back, and problems with her knees.[3] But these symptoms were not born out in clinical examinations, and they were relieved by surgeries, physical therapy, and medication management. The only side effect Ms. Wilson experienced was some drowsiness, and the ALJ found that this side effect did not severely affect her daily functioning. (Tr. at 24) Ms. Wilson was able to do a wide range of daily activities, such as tending to her

---

[3] Ms. Wilson also suffered from high blood pressure, reflected in hospital records from before the relevant time-period, but medication controlled this impairment. (Tr. at 1199)

8

personal hygiene, caring for her pets, performing housework, preparing meals, driving, and shopping in stores. (Tr. at 23-24, 373-377) Such daily activities undermine claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). The ALJ also pointed out that Ms. Wilson did work part-time during the relevant time period. (Tr. at 24) In sum, the ALJ properly considered Ms. Wilson's subjective complaints.

Finally, Ms. Wilson mentioned, but did not meaningfully argue, that stress and knee problems prevented her from performing her past relevant work. The ALJ properly questioned the VE about Ms. Wilson's past work and incorporated all of her limitations into the RFC, including those arising from stress and knee problems. (Tr. at 72-75) Again, objective findings were mild; treatment was conservative; medications helped; noncompliance with doctors' recommendations exacerbated Ms. Wilson's medical conditions; and Ms. Wilson was able to perform a variety of daily activities. The ALJ properly found that Ms. Wilson could return to the past relevant work identified by the VE.

## IV. Conclusion:

There is substantial evidence to support the Commissioner's decision that Ms. Wilson was not disabled. The record was fully developed, and the ALJ properly evaluated Ms. Wilson's subjective complaints. Furthermore, the ALJ properly weighed the medical opinions in the record and did not err at step four. The decision, therefore, should be affirmed and the case dismissed, with prejudice.

DATED this 7th day of November, 2019.

_____
UNITED STATES MAGISTRATE JUDGE